THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **PENNY REALTY INC., ET AL.** | * | **CIVIL ACTION NO. 08-0473** |
| **VERSUS** | * | **JUDGE JAMES** |
| **SOUTHWEST CAPITAL SERVICES, INC., ET AL.** | * | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

Before the undersigned Magistrate Judge, on reference from the District Court, are a motion to remand, (Doc. #11), filed by plaintiffs Penny Realty, Inc., Nouri Hakim, Jack Hakim, and Joseph Hakim, and a motion to strike, (Doc. #15), filed by defendants Mike Marcil; Southwest Capital Services, Inc.; The Marcil Group Inc.; Slapl, L.L.C.; Leslie Gee; Alfred Antonini; Slag, L.L.C.; and Shreveport Properties, L.L.C. (collectively the "original defendants").[1] For the reasons stated below, the motion to strike is **DENIED** and the motion to remand is **GRANTED**.

## BACKGROUND

The instant motions arise from the plaintiffs' joinder of the non-diverse defendants after the original defendants had removed the case to federal court. The original defendants contend that the joinder was solely intended to destroy diversity jurisdiction. Shelton had represented several of the original defendants in connection with the sale of the security indebtedness on a parking lot and a garage. The plaintiffs allege that they detrimentally relied on Shelton's

---

[1] As these are not motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

representations in their attempt to purchase the property.

The plaintiffs filed suit in this matter in Louisiana state court against the original defendants on March 4, 2008. The original defendants removed the case on April 4, 2008. The plaintiffs filed an amended petition, adding three defendants (collectively the "new defendants"): Curtis Shelton and two law firms (Cook, Yancey, King and Galloway, A.P.L.C. and Ayres, Warren, Shelton, & Williams, L.L.C.), on April 21, 2008. The parties agree that the new defendants are non-diverse and that their joinder, if permitted, will require this court to remand the case to state court. The original defendants contend that the plaintiffs joined the new defendants with the desire to force remand and, as a result, this court should strike the amended petition and deny the motion to remand. The plaintiffs deny that they filed the amended petition with that motive, and contend that they have a solid basis for suing the new defendants.

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 15(a) ordinarily governs pretrial amendments to pleadings. The rule states, in relevant part, that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." FED. R. CIV. P. 15(a)(1)(A). This rule is curtailed, however, by 28 U.S.C. § 1447(3) which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." *Ascension Enters. v. Allied Signal*, 969 F. Supp. 359, 360 (M.D.La. 1997) (Section "1447(e) trumps Rule 15(a)."); *see also Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987) (in these circumstances, courts "should scrutinize [the] amendment more closely than an ordinary amendment.")

In the seminal case of *Hensgens v. Deere & Co.*, 833 F.2d at 1181-83, the Fifth Circuit provided the analysis for district courts to use when considering the post-removal joinder of a non-diverse, non-indispensable party whose joinder would destroy diversity jurisdiction.[2] *See Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 474 (5th Cir. 2001) (limiting the utility of the *Hensgens* factors to joinders of non-indispensable parties). The *Hensgens* court recognized that the issue presents competing interests and advised courts to use discretion in reaching a decision. *Id.* at 1182. "On one hand, there is the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources." *Id.* "On the other side, the diverse defendant has an interest in retaining the federal forum." *Id.* The court proceeded to supply district courts with three factors to consider: (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction,"[3] (2) "whether plaintiff has been dilatory in asking for amendment," and (3) "whether plaintiff will be significantly injured if amendment is not allowed." *Id.* The *Hensgens* court instructed district courts to consider "any other factors bearing on the equities" as well. *Id.* "[T]he fact that one factor might weigh in favor of denying the amendment is not dispositive." *Schindler v. Charles Schwab & Co.*, No. 05-0082, 2005 U.S. Dist. LEXIS 9193, at *13 (E.D.La. May 12, 2005); *see also Jade Marine, Inc. v. Detroit Diesel Corp.*, No. 02-2907, 2002 U.S. Dist. LEXIS 24880 (E.D.La. Dec. 20, 2002);

---

[2] Although *Hensgens* was decided before § 1447 was amended to include subsection (e), the Fifth Circuit continues to cite *Hensgens* with approval. *See e.g. Tillman v. CSX Transportation, Inc.*, 929 F.2d 1023 (5th Cir. 1991). In fact, "other courts have opined that § 1447(e) . . . is a codification of Hensgens's holding." *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999).

[3] "The fraudulent joinder doctrine does not apply to joinders that occur after an action is removed." *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999)

*Johnson v. Sepulveda Prop.*, NO. 99-2312, 1999 U.S. Dist. LEXIS 14617 (E.D.La. Sep. 16, 1999).

Turning to the first *Hensgens* factor, district courts have mulled various considerations to determine whether the purpose of a given amendment was to defeat federal jurisdiction. For example courts will ask "whether the plaintiff[] knew or should have known the identity of the non-diverse defendant when the state court complaint was filed." *Schindler v. Charles Schwab & Co.*, No. 05-0082, 2005 U.S. Dist. LEXIS 9193, at *10 (E.D.La. May 12, 2005). In addition, if "a plaintiff states a valid claim against a defendant, it is unlikely that the *primary* purpose of bringing those defendants into a litigation is to destroy diversity jurisdiction." *Id.*; *see also Cobb. v. Delta Exports, Inc.*, 186 F.3d 675, 678 (5th Cir. 1999) ("the defendant . . . has an opportunity at the time joinder is considered to prevent joinder by arguing that there is no colorable claim against the party the plaintiff is seeking to join"). Furthermore, "temporal proximity between Defendants' removal and Plaintiff's sudden effort to add defendants" has been construed as evidence of the plaintiff's purpose to defeat jurisdiction. *Rosa v. Aqualine Res., Inc.*, No. 3:04-CV-0915-B, 2004 U.S. Dist. LEXIS 22130, at *5 (N.D.Tex. Oct. 28, 2004); *accord Holcomb v. Brience, Inc.*, 2001 U.S. Dist. LEXIS 18960, at *9 (N.D.Tex. Nov. 20, 2001) (the court viewed the temporal proximity "and the lack of intervening discovery with 'much suspicion.' ").

Here, the timeline of events implies that the plaintiffs had an ulterior motive when they amended the complaint. The suit was filed on March 4, 2008, and removed on April 4, 2008. On April 21, 2008, the plaintiffs amended the complaint. Moreover, the fact that the plaintiffs knew the newly added defendants' identities prior to filing the original petition is undisputed.

4

However, a closer inspection of the circumstances reveals ample evidence that the plaintiffs' suit against the newly added defendants was contemplated and even intended before the defendants removed the case. Several correspondences between Joseph Guerriero, counsel for the plaintiffs, and Shelton supports this conclusion. As early as February 18, 2008, Guerriero contacted Shelton and indicated there was a possibility the plaintiffs would sue him. (Doc. #23-2, Ex. A) ("you will be involved in this matter if Court action is necessitated."). This possibility began to look like a probability on March 12, 2008, about a week after suit was filed, when Guerriero again contacted Shelton. (Doc. #23-2, Ex. B). This time, Guerriero wrote, "my client is making a claim against you." (*Id.*).

The defendants contend that these correspondences weigh in favor of remand. They contend that the plaintiffs knew they had a claim against the new defendants before removal, yet did not file suit until after removal. This, they contend, demonstrates that the sole purpose of the suit was to destroy diversity jurisdiction. This court disagrees, relying on an April 18, 2008, letter from Shelton to Guerriero which provides an explanation for the delay between March 12, 2008, and April 21, 2008, when the plaintiffs filed the amended petition. In the letter, Shelton wrote that due to the events that had transpired, he "could not and did not undertake the representation of [the plaintiffs]." (Doc. #18-2). The plaintiffs argue that they had been strongly considering suing the new defendants before receiving the letter, but had not done so because they believed Shelton was representing them in the sale of the security indebtedness on the parking lot and garage. Once they learned that Shelton's position was that he had never represented them, they immediately filed suit. Based on the correspondence, it seems that the plaintiffs have a colorable claim against the new defendants. As a result, the first factor weighs

in favor of remand.

Turning to the second *Hensgens* factor, the court concludes that the plaintiffs were not dilatory in filing the amended petition. "In analyzing whether a plaintiff has been dilatory in seeking an amendment, district courts often look to the amount of time that has passed between the filing of the original complaint and the amendment and the amount of time between the removal and the amendment." *Schindler*, 2005 U.S. Dist. LEXIS 9193, at *13-14 (citing cases). "Other courts have analyzed this factor by reference to how far the litigation has progressed." *Id.* at 14 (citing cases). In *Schindler*, the court held that waiting six weeks after filing a state court petition, and 30 more days after the filing of the removal notice was not dilatory. *Id.* In support, the court cited several courts that had held that even longer periods of time were insufficient to be deemed dilatory. *Id.*

Here, the plaintiffs filed the amended complaint seven weeks after the state court petition was filed and about two weeks after the removal of the case. Perhaps more pertinent, the plaintiffs filed the amended complaint only three days after the April 18, 2008, letter from Guerriero to Shelton. Furthermore, the litigation had not progressed at all; the defendants had not even filed their answer by April 21, 2008. Hence, the second factor weighs in favor of remand.

The third *Hensgens* factor is whether the plaintiffs would be significantly injured were this court to deny the amendment. The plaintiffs would be burdened if forced to maintain parallel lawsuits arising out of the same set of facts in both state and federal courts. Thus, this third factor also weighs in favor of remand.

Finally, the other considerations "bearing on the equities" weigh in favor of remand. The possibility of parallel lawsuits threatens judicial resources as well as the time and resources of the

witnesses in the case. In addition, there would be a danger that the courts could reach inconsistent results. Although the court realizes that the defendants have an interest in retaining their chosen federal forum, this interest alone does not justify the requested denial of remand.

For these reasons, the motion to strike, (Doc. #15), is **DENIED** and the motion to remand, (Doc. #11), is **GRANTED**.

Remand of this matter is **STAYED for 15 days** in order to allow the parties an opportunity to appeal this ruling to the district judge. If no timely appeal is filed, this matter is to be remanded forthwith to the Fourth Judicial District Court, Ouachita Parish, Louisiana.

THUS DONE AND SIGNED this 23rd day of May, 2008, in Monroe, Louisiana.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE